

Alfons D'Auria

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main: 212.392.4772
Direct: 917.594.5561
Fax: 212.444.1030
alfons@lipskylowe.com

www.lipskylowe.com

March 17, 2022

VIA ECF
The Honorable Brian M. Cogan, U.S.D.J.
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    Heath v. One of Kind Transport Inc, *et al*.,
             1:21-cv-06920 (BMC)

Dear Judge Cogan:

      This firm represents Plaintiff Charles Heath in this Fair Labor Standards Act and New York Labor Law matter. We submit this letter, on behalf of all parties, seeking the Court's approval of the settlement agreement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918 (S.D.N.Y. July 5, 2012).

I.    Summary of Plaintiff's Claims and Damages[1]

    A.    Overview of Defendants' Business and Plaintiff's Duties

      Individual Defendant Leonid Pogoriler owns and operates Defendant One of Kind Transport Inc, a transportation company operating principally in New York City. The company provides transportation services to individuals to and from doctor's appointments at various medical offices . Plaintiff alleges Defendants employed Plaintiff as a driver from 2011 to December 2021.

    B.    Days and Hours Worked

      From December 2015 until June 2021, Plaintiff alleges he worked five days per week, from 10:00 a.m. to 8:00 p.m., without a break, equaling 10 hours per day and 50 hours per week. From July 2021 until December 2021, Plaintiff alleges he worked two days per week, from 10:30 a.m. to 7:00 p.m., without a break, equaling 8.5 hours per day and 17 hours per week.

---

[1] This summary is based upon the allegations in the First Amended Complaint, which Defendants vigorously deny.



C. Plaintiff's Factual Allegations and Legal Claims

Plaintiff has made certain allegations in this lawsuit regarding Defendants' alleged failure to pay wages and overtime compensation properly under the FLSA and Labor Law. Specifically, Plaintiff alleges that:

1. Defendants failed to pay him the state minimum wage;
2. Defendants failed to pay him overtime;
3. Defendants made unlawful deductions and failed to reimburse work-related expenses;
4. Defendants failed to provide him with an accurate wage statement under N.Y. Lab. Law § 195.3 with any wage payment or with a Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1; and
5. Defendants retaliated against him by firing him after learning about this lawsuit.

D. Plaintiff's Estimated Damages

Based on the alleged employment policies, the hours worked and compensation received, Plaintiff calculates he is owed $84,670.20 in compensatory damages: $54,535.00 in minimum wage + $30,135.20 in overtime, $10,000.00 in statutory penalties for record keeping violations, and $84,670.20 in liquidated damages. He is also owed $31,275.00 for lost wages and emotional distress for Defendants' retaliatory termination.

Accordingly, his total potential recovery equals $125,945.20, without liquidated damages and interest.

II. Procedural and Settlement History

On December 15, 2021, Plaintiff filed his Complaint asserting the following claims: failure to pay the minimum wage under the New York Labor Law; failure to pay overtime premium pay under the Fair Labor Standards Act and Labor Law; unlawful deductions and failure to reimburse for work-related expenses under the Labor Law; failure to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1; and failure to provide an accurate wage statement under N.Y. Lab. Law § 195.[2] Additionally, on January 4, 2022, Plaintiff filed his First Amended Complaint, further asserting FLSA and Labor Law retaliations claims.[3]

On February 23, 2022, the parties participated in a mediation session with a well-regarded mediator, James A. Brown, through the Eastern District of New York Mediation Program, during which a resolution was reached. The parties have since memorialized the terms of the resolution in a fully executed settlement Agreement.[4]

---

[2] Dkt. No. 1.
[3] Dkt. No. 10.
[4] Fully Executed Settlement Agreement, Exhibit A.



III.  Summary of Settlement Terms

Plaintiff has agreed to resolve his claims for $60,000.00: $39,196.59 payable to Plaintiff; $20,803.41 payable to his counsel Lipsky Lowe, $19,568.91 for their fees, equaling one-third of the settlement after expenses, and $1,234.50 payable to his counsel for expenses.[5] Due to Defendants' financial condition, the settlement will be paid over four monthly installments, with the first payment due within 30 days of the Court approving the Agreement, assuming it does. In consideration and exchange for this Settlement, the Plaintiff agrees to give Defendants a release that is limited to his asserted claims.[6]

IV.  Defendants' Defenses as Expressed Throughout Litigation

Defendants opposed the allegations of the Amended Complaint on multiple bases. Among other things, Defendants maintained that Plaintiff was an independent contractor, rather than an employee, and Defendants provided evidence for their position particularly supporting a lack of control over Plaintiff which diminished the conclusion he could be categorized as an employee. In addition, while Defendants considered it unlikely that Plaintiff would be deemed an employee, Plaintiff did not work the requisite number of hours to entitle him to overtime compensation or for a demonstration of any violation of minimum wage obligations. This conclusion was supported by Defendants providing driving assignments to Plaintiff with many different medical office providers (all of which had limited office hours) and Defendants' analysis of their historical payments to Plaintiff. Moreover, Defendants challenged Plaintiff's claimed gasoline expenses, further diminishing his potential damages. Defendants also offered extensive arguments with weighty opposition to Plaintiff's claims under the Labor Law for unlawful deductions and/or retaliation.

V.  The Settlement Agreement Should Be Approved As It is Fair and Reasonable Under the Circumstances and Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House, Inc.*

A.  The Settlement Agreement is Fair and Reasonable.

"Generally, there is a strong presumption in favor of finding a settlement fair, because the Court, is generally not in as good a position as the partis to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted). A court should consider the totality of circumstances to determine whether the proposed settlement is fair and reasonable. This includes at least five factors: (1) the complexity, expense and likely duration of litigation; (2) the stage of the proceedings; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation. *Alvarez v. Sterling Portfolio Inv. L.P.*, No. 1:16-cv-5337 (CBA)(VMS), 2017 U.S. Dist. Lexis 206043, at *25 (E.D.N.Y. Dec. 13, 2017); *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918, at *4-5 (S.D.N.Y.

---

[5] Settlement Agreement ¶ 4(a)-(b).

[6] *Id.* ¶ 3.



July 5, 2012) (citing Medley v. Am. Cancer Soc., No. 1:10-cv-3214 (BSJ), 2010 U.S. Dist. LEXIS 75098, at *3 (S.D.N.Y. July 23, 2010)). In considering these factors, courts may enter judgment on a basis that does not require full payment of a plaintiff's claims or liquidated damages.

> 1. The settlement is reasonable and fair in view of the case's complexity, expense and the duration of the litigation.

While certain parts of this FLSA matter are not highly complex, serious factual questions exist that would require heavy litigation. The parties do not agree on the threshold issue of whether Plaintiff was an employee. Additionally, the parties disagree on the basic facts, including the hours Plaintiff worked, the wages he received, and the circumstances surrounding the end of his employment. While some informal discovery has occurred, if this case were to proceed, the parties would need to conduct full discovery, including depositions.

Litigating FLSA claims and damages at trial would be a fact-intensive process demanding additional costly litigation by both parties. Without this settlement, both parties would need to spend significant time and resources to prepare for a trial, including meeting with and preparing Plaintiff for trial testimony, preparing trial exhibits, preparing motions *in limine*, preparing pre-trial briefing, drafting jury instructions, *voir dire*, and a verdict form, preparing opening statements, presenting the case to a jury, preparing summation, presenting the issue of liquidated damages to the Court for a decision, likely post-trial motions practice, and possible appeal. In short, the anticipated burdens and expenses on both parties would be significant.

This litigation would be costly and time-consuming. As such, this factor favors approving the settlement. *See Marshall v. Deutsche Post DHL*, 1:13-cv-1471 (RJD) (JO), 2015 U.S. Dist. Lexis 125869, at *12 (E.D.N.Y. Sept. 21, 2015) (finding that costly litigation favors approving settlement).

> 2. The settlement is reasonable and fair considering the stage of the proceedings.

The parties participated in meaningful, informal discovery, allowing them to adequately evaluate the strengths and weaknesses of their respective claims and defenses. This favors approving the settlement. *See Alvarez*, 2017 U.S. Dist. Lexis 206043, at *8 (approving settlement where discovery was incomplete but the parties had sufficient information to analyze the case); *Hall v. Prosource Techs., LLC*, No. 1:14-cv-2502 (SIL), 2016 US. Dist. Lexis 53791, at *39 (E.D.N.Y. April 11, 2016) (approving settlement where informal discovery was exchanged sufficient enough the parties had "adequate knowledge of the strengths and weaknesses of their respective claims and defenses").

> 3. The settlement is reasonable and fair considering the risks of establishing liability and damages.

The biggest risk in Plaintiff's case is establishing that he was an employee and not an independent contractor. Additionally, Plaintiff would also have to prove the hours he worked – a hotly contested issue. Based on Defendants' position that Plaintiff was an



independent contractor and that he worked a fraction of the hours alleged, Plaintiff would be entitled to a minimum amount of damages. But the settlement avoids this risk. It is accordingly uncertain whether, or how much, he would recover at trial. This factor, therefore, favors approval of the settlement. *See Marshall*, 2015 U.S. Dist. Lexis 125869, at *13 (explaining because the case was not a "slam dunk" these factors favor approval); *Bodon v. Domino's Pizza, LLC*, No. 1:09-cv-2941 (SLT), 2015 U.S. Dist. Lexis 17358 (E.D.N.Y. Jan. 16, 2015) ("[T]she question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . .").

    4.    <u>The settlement is reasonable and fair considering Defendants' ability to withstand a larger judgment.</u>

Defendants have made explicit representations that they lack the financial resources to pay the settlement amount in one payment.[7] This is a meaningful factor in Plaintiff agreeing to resolve his claims for less than his claimed damages, as such an arrangement casts doubt upon whether Defendants would be able to satisfy a full judgment at trial. The settlement, however, remains reasonable considering Defendants' financial condition. *See Sanchez*, 2018 U.S. Dist. LEXIS 70647, *9 (approving settlement that provides for 20% of the claimed damages based on defendants' financial condition).

    5.    <u>The settlement is reasonable and fair considering Plaintiff's best possible recovery and the litigation risks.</u>

Plaintiffs calculates his total recovery to be $125,945.20, excluding interest and liquidated damages. To obtain this, he would have to prove that he was an employee of Defendants, and further prove the hours he worked. Additionally, he would have to disprove the hours Defendants claim he worked and any supporting documentation.

A real likelihood, therefore, exists that he would recover a fraction of the settlement amount for his unpaid wages and statutory penalties—or risk recovering nothing if he could not show he was an employee, rather than an independent contractor. But this settlement provides him with almost 50% of his claimed damages. This range favors approval. *See Alvarez*, 2017 U.S. Dist. Lexis 206043, at * 25 (approving an FLSA settlement where Plaintiffs' recovery range varied significantly on the success of certain defenses).

    B.    <u>The Agreement Is the Product of Arm's-Length Settlement Negotiations.</u>

The parties engaged in good faith, arm's length negotiation in reaching this settlement. Counsel for both parties engaged in mediation with a well-regarded mediator, James A. Brown. These factors favor approval. *See Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 1:09-cv-486 (ETB), 2012 U.S. Dist. Lexis 144446, at * 7-8 (E.D.N.Y. Oct. 4, 2012) (approving settlement that was reached following arm's-length negotiations and with a mediator's assistance).

---

[7] *Id*. ¶ 11.



    C.    The Agreement Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House*.

In August 2015, the Second Circuit resolved an arguably unsettled issue: parties cannot privately settle FLSA claims without either the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Court also explained in *dicta* when an FLSA settlement is valid. Namely, it questioned the validity of agreements that contain confidentiality provisions, single-sided general releases and attorneys' fees that go beyond a certain percentage. *Id*. None of those issues are present in the Agreement.

    1.    The Agreement complies with *Cheeks* since it is publicly filed.

The Agreement does not contain a confidentiality provision and it is publicly available, having been filed on the CM/ECF system with this motion. This concern thus does not exist, favoring approval.

    2.    The Agreement complies with *Cheeks* since it contains a limited release.

The Agreement's release is limited to the wage and hour claims asserted in this action.[8] This favors approval. *See Gomez v. Midwood Lumber & Millwork, Inc.*, No. 1:17-cv-3064 (KAM)(JO), 2018 U.S. Dist. Lexis 101019, at * 15 (E.D.N.Y. June 17, 2018) (approving settlement agreement when the release was limited to the asserted wage and hour claims); *Wiles v. Logan Staffing Sols. Inc.*, No. 18-cv-9953 (RA), 2020 U.S. Dist. LEXIS 36485, at *4 (S.D.N.Y. Mar. 2, 2020).

    3.    The Agreement complies with *Cheeks* since the non-disparagement clause allows for truthful statements.

The Non-Disparagement Clause contained in the Agreement allows for truthful statements by the Plaintiff about this action.[9] The concern of a full non-disparagement clause accordingly does not exist, favoring approval.

VI.    The Court Should Approve Plaintiffs Counsel's Fees and Expenses, As the Amounts Are Reasonable

Subject to the Court's approval, Plaintiff's Counsel seeks $19,568.91 in fees, which equals one-third of the settlement after expenses, and $1,234.50 in expenses. All factors favor approving these amounts.

    A.    Counsel's Fees of One-Third of The Settlement Is Reasonable and Regularly Approved.

Plaintiff's Counsel shall receive, under the Agreement and subject to the Court's approval, $19,568.91, which is one-third of the $60,000 settlement, after expenses.[10]

---

[8] Settlement Agreement ¶ 3.
[9] *Id*. ¶ 7
[10] *Id*. ¶ 4.



Plaintiff's Counsel seeks one-third in fees also pursuant to the contingency fee agreement with Plaintiff.

This amount is reasonable as contingency fees of one-third in the FLSA context are routinely approved. *See e.g., Sanchez v. Alan's R E 99 Cents & Up Inc.,* No. 16-cv-1881 (CBA)(LB), 2018 U.S. Dist. LEXIS 70647, at *13 (E.D.N.Y. Apr. 24, 2018) (approving one-third fee request in FLSA case); *Emiliano Nieto Zepeda v. Baggio, Ltd.*, No. 1:17-cv-2290 (VB), 2017 U.S. Dist. LEXIS 143332, at *2 (S.D.N.Y. Sept. 1, 2017) (approving one-third request fee request). And it remains reasonable for counsel to receive one-third of the fund even when the Plaintiffs are not receiving 100% of their claimed damages. *See Emiliano Nieto Zepeda*, 2017 U.S. Dist. LEXIS 143332, at *2 (approving one-third request when Plaintiffs is receiving 50% of her claimed damages).

Also, this firm assumed a meaningful financial risk when agreeing to represent Plaintiffs under this contingency fee arrangement. We took on the case with no guarantee if and when there would be a resolution, while investing our time and effort and advancing costs – all with no guarantee of any compensation. Indeed, in unsuccessful cases, this firm does not recover anything despite investing hundreds of hours and thousands in expenses. This assumption of risk is unique to the plaintiffs' bar and further favors approving the near-one-third contingency fee. *See Garcia*, 2012 U.S. Dist. Lexis 144446, at *20; *Campos v. Goode*, No. 1:10-cv-224 (DF), 2011 U.S. Dist. Lexis 22959, at *19 (S.D.N.Y. March 4, 2011).

B. Counsel's Fee Request Is Further Reasonable Considering Their Hourly Rates and Hours Expended.

Lipsky Lowe has expended more than 52 hours, equaling $16,304.50 in fees: 13.7 hours for Douglas Lipsky (Partner) at $450 per hour, totaling $6,165.00; 31.0 hours for Alfons D'Auria (Associate) at $300 per hour, totaling $9,300.00; and 7.3 hours for Carmen Espinal (Paralegal) at $115 per hour, totaling $839.5.[11] These hours and rates are reasonable.

1. Counsel's fee request is reasonable considering the requested hourly rates, their experience and previously approved rates.

Plaintiff's request a rate of $450 for partner Douglas B. Lipsky, which is reasonable considering his background: he has practiced employment law for 19 years; he is a member of the New York State Bar Association, Wage and Hour Committee; he has presented on numerous issues, including presenting to the New York State Academy of Trial Lawyers on employment law and the FLSA; he was a contributing authority on a treatise on wage and hour litigation, Wage & Hour Collective and Class Litigation, ALM Law Journal Press (2012); prior to founding Lipsky Lowe, he was a Senior Associate at Seyfarth Shaw LLP in its employment practice group, which is consistently ranked as one of the top employment practice groups in the Country. Courts, recognizing this background, have previously approved comparable rates. *See Gromova v. Orthosnap Corp., et al.,* 2:20-cv-2193 (JMA)(JMW) (E.D.N.Y. Jan. 7, 2022) (approving Lipsky's $400 rate); *Rosado v. The*

---

[11] Contemporaneous and near contemporaneous time records, Exhibit B.



The Honorable Brian M. Cogan
March 17, 2022

*French Paradox Inc., et al.*, 1:20-cv-7788 (MKV) (S.D.N.Y. April 26, 2021) (approving Lipsky's $400 rate); *Patrascu v. Frederic Fekkai New York LLC*, 1:19-cv-1376 (VEC) (S.D.N.Y. June 17, 2020) (same); *Owens v. Fresh Direct LLC*, 1:14-cv-1909 (VEC) (S.D.N.Y. Oct. 30, 2015) (approving one-third fee request in which, for lodestar purposes, Lipsky's hourly rate was $400); *Spencer v. No Parking Today, Inc., et al.*, No. 12-cv-6323 (ALC) (AJP), Dkt. No. 237 (S.D.N.Y. Feb. 20, 2015) (approving one-third fee request in which, for lodestar purposes, Lipsky's hourly rate was $400); *Ceka v. PBM/CMSI Inc.*, No. 12-cv-1711 (DAB), 2014 U.S. Dist. LEXIS 168169, *20 (S.D.N.Y. Dec. 2, 2014) (same).

Furthermore, courts in this District have approved the rate requested here for attorneys of similar experience in FLSA matters. *See e.g., Hall v. ProSource Technologies, LLC*, 14-cv-2502 (SIL), 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. April 11, 2016) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners"); *Martinez v. New 168 Supermarket LLC*, 2020 U.S. Dist. LEXIS 151316 (E.D.N.Y. Aug. 19, 2020) ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners).

Plaintiff requests an hourly rate of $300 for Alfons D'Auria, which is reasonable considering his background: he is a fourth-year associate who graduated in 2018 from Tulane University Law School; he has practiced exclusively in employment law since graduating, including representing both individual and class/collective plaintiffs; he was recognized as a 2021 New York Super Lawyers Rising Star in the employment and labor field. While no court has previously approved this hourly rate, Your Honor has recently approved higher hourly rates for attorneys with less experience. *See Lazaro v. Best Fish Mkt. Corp.*, 21-cv-5305 (BMC), 2022 U.S. Dist. LEXIS 17015, at *5 (E.D.N.Y. Jan 29, 2022) (Approving an hourly rate of $350 for attorney with "four years' experience, most of it in non-wage cases and some of it in a foreign, non-common law country.").

As to the paralegal on this case, Carmen Espinal, Plaintiff requests an hourly rate of $115. Ms. Espinal graduated with a Master's degree in Public Administration from John Jay College of Criminal Justice is 2013 and a Master's degree in Paralegal Studies from George Washington University in 2017. She has worked as a paralegal since 2013. Her rate is consistent with rates Your Honor has approved. *See Lazaro*, 2022 U.S. Dist. LEXIS 17015, at *5 (Noting that a claimed paralegal rate of $125 was "within the parameters in this district.").

> 2. Counsel's fee request is further reasonable considering they regularly represent clients who pay them rates that are greater than the requested rates.

Plaintiff's Counsel often represents individuals and businesses who pay them hourly rates that exceed the requested rates: clients regularly agree to pay Mr. Lipsky $600 or more per hour and agree to pay Mr. D'Auria $375 per hour. This further underscores the reasonableness of the requested rate, as it reflects the market rate for attorneys of their experience. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (explaining "the range of rates that Plaintiffs' counsel actually charge their clients . . . is obviously strong evidence of what the market will bear").



>   3. Counsel's fee request is further reasonable considering hourly rates are not stagnant.

These rates are further reasonable when considering hourly rates are not stagnant: they generally increase year-to-year, resulting in the market rate for attorneys in 2022 being greater than what it was in previous years. The average attorney hourly rates in New York, in fact, increased by 3% in 2021.[12] It accordingly follows that the hourly rates that were approved in earlier years do not reflect what those rates would be in today's market for someone with the same experience.

Putting this in context, the $450 hourly rate that was recognized as reasonable in 2016 for a Partner in *Hall v. ProSource Technologies, LLC* would be $531 in today's market.[13] Additionally, the $300 hourly rate that was approved for fifth-year associates in *Hall* in 2016 would be $354 in today's market.[14]

>   4. Counsel's fees are further reasonable considering the work done on this case and should not be reduced based on an early resolution.

Before filing the lawsuit, the parties engaged in meaningful, but unsuccessful, settlement talks. After the lawsuit was filed, the parties completed meaningful informal discovery and engaged in significant settlement talks.

Also, that the parties reached an early resolution should not, respectfully, be a factor. When this firm, like other plaintiffs' firms, takes on a contingency fee case, we understand that the litigation might last years or months. Yet courts do not increase the requested percentage if the case last years. Respectfully, courts should not, correspondingly, reduce the requested fee based on an early resolution because, doing so, disincentivizes early resolutions.

>   5. Counsel's fees are further reasonable considering the division of labor between partner and associate.

Mr. D'Auria performed the majority of the work on this matter. This case is therefore not the situation where a partner does all of the work and seeks to be compensated for associate-level work. This firm was, rather, able to allocate the most cost efficient resources to this case, while effectively representing the Plaintiff.

>   6. Counsel's fee request is further reasonable considering the lodestar multiplier.

Plaintiff's Counsel's fees are $16, 304.50 and we are requesting $19,568.91 in fees, a lodestar multiplier of 1.20. To be sure, Plaintiff's Counsel's fees will continue to increase through the motion for settlement approval, collecting and distributing scheduled settlement payments, among other miscellaneous tasks, further reducing the lodestar multiplier. And the lodestar multiplier of 1.20 is well-within the range routinely approved

---

[12] https://www.attorneyatwork.com/solo-and-small-firm-lawyer-hourly-rates/
[13] $450 x 1.03^6 = $531.
[14] $300 x 1.03^6 = $354.


The Honorable Brian M. Cogan
March 17, 2022

in this District. *See Alvarez*, 2017 U.S. Dist. LEXIS 206043 at *23-24 (approving a lodestar multiplier of 1.36 and collecting cases demonstrating higher multipliers approved in this district).

  C. Lipsky Lowe Is Entitled to Their Expenses

Lipsky Lowe is entitled to recover its costs in additional to their reasonable fees. See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663. These include reimbursement for, by way of example, filing fees and mediator fee. *See Marquez v. Erenler, Inc.*, No. 12-cv-8580 (GHW), 2014 U.S. Dist. LEXIS 159128, at *9 (S.D.N.Y. Nov. 10, 2014) (awarding filing and transcript fees, and process server expenses); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (awarding expenses including filing fees and postage).

Here, Counsel incurred $1,234.50 in expenses for the filing fee, the mediator's fee and the process server fee.[15] Counsel should be reimbursed for them.

VII. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the Agreement and award the requested attorneys' fees and expenses.

            Respectfully submitted,
            LIPSKY LOWE LLP


            s/ Alfons D'Auria
            Douglas B. Lipsky
            Alfons D'Auria


CC: All Counsel of Record (Via ECF)

---

[15] Expense records, Exhibit C.